1  NICOLA T. HANNA
   United States Attorney
2  PATRICK R. FITZGERALD
   Assistant United States Attorney
3  Chief, National Security Division
   LISA E. FELDMAN (Cal. Bar No. 130019)
4  Assistant United States Attorney
   Cyber & Intellectual Property Crimes Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-0633
7       Facsimile: (213) 894-0141
        E-mail:   lisa.feldman@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10               UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. SACR 18-00085-JLS

13            Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                       ROGELIO VASQUEZ
14            v.

15  ROGELIO VASQUEZ,
        aka "Roger Vasquez,"
16      aka "James Harrison,"
        dba "PRB Logics Corporation,"
17
              Defendant.
18

19

20      1.   This constitutes the plea agreement between ROGELIO

21  VASQUEZ, also known as ("aka") "Roger Vasquez," aka "James Harrison,"

22  and doing business as "PRB Logics Corporation" ("defendant"), and the

23  United States Attorney's Office for the Central District of

24  California (the "USAO") in the above-captioned case.  This agreement

25  is limited to the USAO and cannot bind any other federal, state,

26  local, or foreign prosecuting, enforcement, administrative, or

27  regulatory authorities.

28

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts five, fifteen, sixteen, and eighteen, of the indictment in United States v. Rogelio Vasquez, SACR No. 00085-JLS, which charge defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a)(1), and Trafficking in Counterfeit Military Goods, in violation of 18 U.S.C. § 2320(a)(3).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

i.   Consent to the forfeiture of all funds seized in

2

1   connection with this matter, in particular the $97,362 in U.S.

2   Currency that is the defendant in the civil forfeiture action

3   entitled *United States v. $97,362.00 in U.S. Currency*, CV 18-0681

4   CJC.

5   <u>FORFEITURE</u>

6      3.   Defendant further agrees:

7         a.   Truthfully to disclose to law enforcement officials,

8   at a date and time to be set by the USAO, the location of,

9   defendant's ownership interest in, and all other information known to

10   defendant about all monies, properties, and/or assets of any kind,

11   derived from or acquired as a result of, or used to facilitate the

12   commission of, defendant's illegal activities, and to forfeit all

13   right, title, and interest in and to such items, specifically

14   including all right, title, and interest in and to all United States

15   currency, property and assets (1) all counterfeit and suspected

16   counterfeit integrated circuits and electronic parts, as well as the

17   $97,362 in United States currency referenced above, seized by law

18   enforcement officials during execution of the search warrant at

19   defendant's residence on May 26, 2016; (2) all counterfeit Xilinx and

20   Analog Devices integrated circuits sold by defendant to undercover

21   federal agents on or about December 23, 2015, February 4, 2016,

22   February 11, 2016, March 30, 2016, April 7, 2016, May 5, 2016, and

23   May 31, 2016; (3) all counterfeit Intel integrated circuits sold by

24   defendant to Company A between approximately 2014 and 2016, and (4)

25   to the extent not already forfeited or destroyed, all counterfeit

26   integrated circuits and other electronic parts formally seized by

27   U.S. Customs and Border Protection on or about July 30, 2009, June 7,

28   2011, September 25, 2012 (two different seizures on that day),

October 8, 2012, October 1, 2015, January 20, 2016, March 1, 2016, May 9, 2016, and May 12, 2016, all of which defendant admits constitute the proceeds of defendant's illegal activity and/or were used to facilitate defendant's criminal activity, in violation of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 2320(a)(1) (Trafficking in Counterfeit Goods), and 18 U.S.C. § 2320(a)(3) (Trafficking in Counterfeit Military Goods).

       b.  To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets and to the forfeiture of the assets.

       c.  To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent judgment of forfeiture in the civil forfeiture action referenced above, and the completing of any other legal documents required for the transfer of title of the listed assets to the United States.

       d.  Not to contest any administrative or civil judicial proceedings commenced against these properties pursuant to 18 U.S.C. § 2323 or 18 U.S.C. § 981. With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

1        e.    Not to assist any other individual or entity in any

2   effort falsely to contest the forfeiture of the assets described

3   above.

4        f.    Not to claim that reasonable cause to seize the assets

5   was lacking.

6        g.    To prevent the transfer, sale, destruction, or loss of

7   any and all assets described above to the extent defendant has the

8   ability to do so.

9        h.    That forfeiture of assets described above shall not be

10  counted toward satisfaction of any special assessment, fine,

11  restitution, costs, or other penalty the Court may impose.

12                        THE USAO'S OBLIGATIONS

13       4.    The USAO agrees to:

14       a.    Not contest facts agreed to in this agreement.

15       b.    Abide by all agreements regarding sentencing contained

16  in this agreement.

17       c.    At the time of sentencing, move to dismiss the

18  remaining counts of the indictment as against defendant.  Defendant

19  agrees, however, that at the time of sentencing the Court may

20  consider any dismissed charges in determining the applicable

21  Sentencing Guidelines range, the propriety and extent of any

22  departure from that range, and the sentence to be imposed.

23       d.    At the time of sentencing, provided that defendant

24  demonstrates an acceptance of responsibility for the offenses up to

25  and including the time of sentencing, recommend a two-level reduction

26  in the applicable Sentencing Guidelines offense level, pursuant to

27  U.S.S.G. § 3E1.1, and move for an additional one-level reduction if

28  available under that section.

1          e.    Except for criminal tax violations (including
2    conspiracy to commit such violations chargeable under 18 U.S.C.
3    § 371), not further criminally prosecute defendant for violations of
4    18 U.S.C. § 38 (Fraud Involving Aircraft or Space Vehicle Parts in
5    Interstate or Foreign Commerce); 18 U.S.C. § 542 (Entry of Goods by
6    False Statements), 18 U.S.C. § 545 (Smuggling Goods into the United
7    States), 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud), 18
8    U.S.C. § 371 (Conspiracy to Commit any of the above violations) or
9    further violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C.
10   § 2320(a)(1) (Trafficking in Counterfeit Goods), and 18 U.S.C.
11   § 2320(a)(3) (Trafficking in Counterfeit Military Goods) arising out
12   of defendant's conduct described in the agreed-to factual basis set
13   forth in paragraph 17 below.  Defendant understands that the USAO is
14   free to criminally prosecute defendant for any other unlawful past
15   conduct or any unlawful conduct that occurs after the date of this
16   agreement.  Defendant agrees that at the time of sentencing the Court
17   may consider the uncharged conduct in determining the applicable
18   Sentencing Guidelines range, the propriety and extent of any
19   departure from that range, and the sentence to be imposed after
20   consideration of the Sentencing Guidelines and all other relevant
21   factors under 18 U.S.C. § 3553(a).

22                      NATURE OF THE OFFENSES

23        5.   Defendant understands that for defendant to be guilty of
24   the crime charged in count five, that is, Wire Fraud, in violation of
25   Title 18, United States Code, Section 1343, the following must be
26   true:

27        First, defendant knowingly participated in, devised, or intended
28   to devise a scheme or plan to defraud, or a scheme or plan for

1  obtaining money or property by means of false or fraudulent
2  pretenses, representations or promises;
3      Second, the statements made or facts omitted as part of the
4  scheme were material; that is, they had a natural tendency to
5  influence, or were capable of influencing, a person to part with
6  money or property;
7      Third, defendant acted with intent to defraud; that is, the
8  intent to deceive or cheat; and
9      Fourth, defendant used, or caused to be used, the wires in
10 interstate or foreign commerce to carry out or attempt to carry out
11 an essential part of the scheme.
12     6.   Defendant understands that for defendant to be guilty of
13 the crime charged in counts sixteen and eighteen, that is,
14 Trafficking in Counterfeit Goods, in violation of Title 18, United
15 States Code, Section 2320(a)(1), the following must be true:
16     First, defendant trafficked in goods;
17     Second, such trafficking was intentional;
18     Third, defendant used a counterfeit mark on, or in connection
19 with, such goods;
20     Fourth, defendant knew the mark so used was counterfeit, and
21     Fifth, to the extent the goods were genuine (i.e. manufactured
22 by the original equipment manufacturer), defendant repackaged the
23 genuine goods in a manner intended to deceive or confuse.
24     7.   Defendant understands that for defendant to be guilty of
25 the crime charged in count fifteen, that is, Trafficking in
26 Counterfeit Military Goods, in violation of Title 18, United States
27 Code, Section 2320(a)(3), the following must be true:
28     First, defendant trafficked in goods or services;

Second, defendant knew such goods or services were counterfeit military goods or services; and

Third, the use, malfunction or failure of the counterfeit military goods or services was likely to cause serious bodily injury or death, the disclosure of classified information, impairment of combat operations, or other significant harm to a combat operation, a member of the Armed Forces, or to national security.

8. Defendant understands that for defendant to be guilty of Causing an Act to Be Done, as charged in counts fifteen and sixteen, in violation of Title 18, United States Code, Section 2(b), the following must be true:

Defendant willfully caused an act to be done which if directly performed by him or another would be an offense against the United States.

### PENALTIES AND RESTITUTION

9. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2320(a)(1), (b)(1), is: 10 years' imprisonment; a 3-year period of supervised release; a fine of $2,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2320(a)(3), (b)(3), is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $5,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 60 years' imprisonment; a 3-year period of supervised release; a fine of $9,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $400.

13.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $802,638, but

9

1    recognize and agree that this amount could change based on facts that
2    come to the attention of the parties prior to sentencing.

3        14.   Defendant understands that supervised release is a period
4    of time following imprisonment during which defendant will be subject
5    to various restrictions and requirements.   Defendant understands that
6    if defendant violates one or more of the conditions of any supervised
7    release imposed, defendant may be returned to prison for all or part
8    of the term of supervised release authorized by statute for the
9    offense that resulted in the term of supervised release, which could
10   result in defendant serving a total term of imprisonment greater than
11   the statutory maximum stated above.

12       15.   Defendant understands that, by pleading guilty, defendant
13   may be giving up valuable government benefits and valuable civic
14   rights, such as the right to vote, the right to possess a firearm,
15   the right to hold office, and the right to serve on a jury.
16   Defendant understands that once the court accepts defendant's guilty
17   plea, it will be a federal felony for defendant to possess a firearm
18   or ammunition.   Defendant understands that the conviction in this
19   case may also subject defendant to various other collateral
20   consequences, including but not limited to revocation of probation,
21   parole, or supervised release in another case and suspension or
22   revocation of a professional license.   Defendant understands that
23   unanticipated collateral consequences will not serve as grounds to
24   withdraw defendant's guilty plea.

25       16.   Defendant understands that, if defendant is not a United
26   States citizen, the felony conviction in this case may subject
27   defendant to: removal, also known as deportation, which may, under
28   some circumstances, be mandatory; denial of citizenship; and denial

10

of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.  K.C.

## FACTUAL BASIS

17.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 19 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.  K.C.

Xilinx, Inc. ("Xilinx"), Analog Devices, Inc. ("Analog Devices") and Intel Corporation ("Intel") are registered trademarks on the principal register of the United States Patent and Trademark Office ("USPTO") for the trafficking in integrated circuits ("ICs"), specifically, a Xilinx mark, Registration No. 1713232 ("the Xilinx mark"), an Analog Devices mark, Registration No. 1717784 ("the Analog Devices mark"), and an Intel mark, Registration No. 2446693 ("the Intel mark"), respectively.  The trademarks were active at all times relevant to defendant's conduct as set forth in this factual basis.

In approximately January, 2009, defendant Rogelio Vasquez, also known as Roger Vasquez, began operating PRB Logics Corporation ("PRB Logics") from his residence in Orange, California, and received shipments at a mail drop in Costa Mesa, California.

Between at least July 2009 and continuing through May 31, 2016, defendant, through PRB Logics and using the alias "James Harrison," knowingly bought ICs bearing counterfeit marks from various sources in China, imported them into the United States, and resold them to customers in the United States.  Defendant knew that the ICs he bought from China were old, used and/or discarded ICs and further

11

1  knew that his Chinese suppliers pulled the ICs off of discarded
2  circuit boards in China, sanded off all of the markings and then
   repainted them in a process commonly referred to as
3  "black-topping."  Defendant further knew that after they were
   blacktopped, the ICs were re-marked with trademarked marks and then
4  further re-marked with an altered date code, lot code and/or country
   of origin code, to appear as if they were new and original equipment
5  manufacturer ("OEM") parts.  In some cases, defendant communicated
   with his Chinese suppliers via email, in which they discussed how to
6  re-mark ICs to avoid customers discovering that the ICs were re-
   marked.  Defendant resold the counterfeit ICs with an intent to
7  deceive his customers and/or end users by failing to disclose that
8  the ICs were blacktopped and/or remarked.   KC

9       From approximately July 2009 through May 2016, PRB Logics had at
10 least 10 international mail shipments of ICs and electronics bearing
   counterfeit marks seized by United States Customs and Border
11 Protection ("CBP").  The marks were counterfeits of marks registered
   on the principal register of the USPTO for use in connection with the
12 trafficking of ICs, and in use, which defendant knew were likely to
   cause confusion, mistake and to deceive.  The total value of these
13 ICs, had they been genuine, was approximately $31,866.

14      Between approximately November 2015 and May 2016, on five
15 separate occasions, defendant, on behalf of PRB Logics, knowingly
   sold a total of approximately 82 counterfeit Xilinx ICs and 24
16 counterfeit Analog Devices ICs to a federal undercover agent ("UCA")
   posing as an electronics reseller.  All of the part numbers ordered
17 by the UCA were historically used in military applications.  For each
   of the undercover purchases, defendant knew that the ICs contained
18 counterfeit Xilinx and Analog Devices marks, which were likely to
   cause confusion, mistake and to deceive.  Defendant knew   KC
19                                             that the parts he
20 sold to the UCA were,        .. used, blacktopped and re-marked to
   appear new and original.  The counterfeit ICs sold by defendant to
21 the UCA had a total retail value of $91,580.

22      During negotiations for the fourth undercover purchase in March
23 2016, in recorded calls, defendant told the UCA that his Chinese
   supplier would do a perfect job of re-marking the parts and the UCA
24 told defendant that he (the UCA) believed his customer would be re-
   selling the ICs to the U.S. military.  In another call, after the UCA
25 said he needed the ICs to pass for the real thing, defendant told him
   not to worry and that his (Chinese) supplier would send photos.
26
27      During negotiations for the fifth undercover purchase, in a
   recorded call on April 5, 2016, defendant told the UCA that his
28 suppliers pull ICs from circuit boards in China and they are later
   re-marked, but he does not tell customers that the parts are

refurbished because he knows they would not buy them "because practically no one wants refurbished parts." Defendant explained that the only real risk is that the parts would be seized by Customs.

In a recorded call on or about April 21, 2016, the UCA told defendant that he (the UCA) had won the bid to supply the ICs to a top 10 defense contractor. (The UCA told defendant the actual name of the company but it is referred to here only as "the defense contractor"). The UCA then told defendant that the defense contractor would be using the ICs in the B-1 Bomber and the defense contractor needed eight parts every two months for six months, but the defense contractor needed a specific date code of "1446" (which the UCA knew from Xilinx was a fake date code for that part). Defendant believed that the ICs would be used by the United States military in the B-1 Lancer Bomber military aircraft, and nevertheless said he would instruct his Chinese supplier to mark the ICs with date code "1446." Later that day, defendant emailed his Chinese supplier with instructions to mark the ICs with the "1446" date code, which the supplier agreed to do.

After accepting a purchase order from the UCA for the eight above-referenced Xilinx parts, on or about May 3, 2016, defendant shipped or caused to be shipped to the UCA eight ICs, part number XQ2VP40-5FG676N, bearing a counterfeit Xilinx mark and the date code "1446," received by federal agents on May 5, 2016. If the counterfeit ICs had been used in the B-1 Lancer Bomber military aircraft, they would likely have caused impairment of combat operations, or other significant harm to a combat operation because a failure of the counterfeit ICs would impact the B-1's operational capabilities.

Between April and May 2016, defendant, on behalf of PRB Logics, knowingly sold a total of approximately 8,000 ICs bearing Intel part number S80C196KB12 and the counterfeit Intel mark, to Company A, located in Orange County, California. On or about May 11, 2016, at defendant's direction, a portion of the approximately 8,000 counterfeit Intel parts was shipped to Company A, which retained 217 of those counterfeit Intel ICs. Company A re-sold approximately 7,783 of the 8,000 counterfeit parts to its customer, Company B, located in Orange County, California. Company B, a defense contractor and subcontractor that does business with the U.S. military as well as other defense contractors, purchased Intel part number S80C196KB12 to use in products for numerous customers, including products sold to the U.S. Army, the U.S. Navy, and the U.S. Marine Corps, which were used in various military applications. All approximately 8,000 counterfeit Intel ICs bore the counterfeit Intel mark. Defendant knew the ICs contained the counterfeit Intel mark, and that the ICs were re-marked in a manner intended to deceive or confuse. The total retail value of the approximately 8,000

13

1  counterfeit Intel ICs sold to Company A, had they been genuine, was
2  approximately $144,000.

3      Despite the fact that the purchase order from Company A
specified new parts, defendant obtained the 8,000 ICs from Chinese
4  suppliers which he knew had pulled the parts from discarded circuit
boards, blacktopped and then re-marked the parts with the Intel mark,
5  part number, date codes and lot codes. Defendant falsely told Company
A that the ICs were new, but engaged in email communications with his
6  Chinese suppliers instructing them on how to re-mark the ICs, and
with a Chinese testing laboratory ("test lab") instructing the lab to
7  prepare separate reports for him with all test results and sanitized
versions for Company A without the results of certain tests so that
8  Company A (and thus, Company B) would not discover that the ICs were,
in fact, used and re-marked.  For example, on April 1, 2016,
9  defendant sent an email from California to the test lab in China
asking for two separate reports, and instructing the lab not to
10  include the marking test on the test report to be sent to Company A,
that defendant knows the parts are re-marked, and asking if there is
11  a way to ship parts to defendant so they are not seized by Customs.
Moreover, on April 18, 2016, after one of his Chinese suppliers
12  confirmed that at defendant's request, it was shipping the ICs
directly to defendant's customer (Company A), defendant sent an email
13  from California to that supplier in China instructing the supplier
not to use the supplier's name on the shipment because defendant did
14  not want the customer to ever contact the supplier because defendant
told his customer that the parts were new.
15
16

17      On or about May 10, 2016, per his instructions, defendant
received both the original and the sanitized version of one of the
18  test reports from the Chinese test lab and forwarded the sanitized
version to Company A.  Defendant's above-referenced emails to his
19  Chinese suppliers and Chinese test lab, and forwarding of the
sanitized test report to Company A, were done with an intent to
20  defraud and Company A would not have purchased the ICs from defendant
for Company B if it had known that the parts were used and re-marked.
21

22      On May 26, 2016, federal agents executed a search warrant at the
offices of PRB Logics, which was also defendant's residence, in
23  Orange, California.  Agents seized approximately 1,307 ICs bearing
counterfeit Xilinx marks, which were likely to cause confusion,
24  mistake and to deceive, and some of which were marked with part
numbers historically used in military applications.  For example,
25  federal agents seized approximately 480 ICs containing the
counterfeit Intel mark and marked with part number XC2V1000-4FGG456C
26  and date code 0725.  Defendant knew that the ICs seized bore
counterfeit Xilinx marks, and yet, if they had not been seized, his
27  intention was to sell them, including to contractors doing business
28

1  with the United States government and military.  The total retail
2  value of the counterfeit Xilinx ICs seized from PRB's offices, had
   they been genuine, was approximately $626,772.
3
4     During the search of PRB Logics, federal agents also seized
   approximately $97,362 in cash, hidden throughout defendant's
5  residence and garage.  The $97,362 constituted proceeds from
   defendant's sale of counterfeit ICs through PRB Logics, including
6  approximately $80,000 of which came from the above-referenced sale of
   counterfeit Intel ICs to Company A.
7
8     In approximately August 2012, defendant purchased counterfeit
   ICs from China and sold them to a defense subcontractor located
9  within the United States, which, in turn, supplied the parts to a
   defense contractor.  The counterfeit parts ended up in a classified
10 weapon system used by the U.S. Air Force.
11    The total infringement amount for the above-described
   counterfeit ICs is approximately $894,218, consisting of the 82
12 counterfeit Xilinx and 24 counterfeit Analog Devices ICs sold by
   defendant to the UCA, the 8,000 counterfeit Intel ICs sold by
13 defendant to Company A, the 1,307 counterfeit Xilinx ICs seized by
   federal agents from PRB Logics during the search warrant, and the
14 counterfeit ICs seized by CBP between July 2009 and May 2016.  As to
   each of these counterfeit ICs, defendant did not have permission from
15 the trademark holders to sell ICs bearing their marks.  Defendant
   knew they contained counterfeit marks, and that the ICs were re-
16 marked in a manner intended to deceive or confuse.  Defendant also
   knew that the ICs were used ICs pulled from circuit boards,
17 blacktopped and re-marked with Xilinx, Analog Devices, Intel and
   other brand marks and false markings in order to deceive end users
18 into thinking they were new and original parts.
19
20                        SENTENCING FACTORS
21    18.  Defendant understands that in determining defendant's
22 sentence the Court is required to calculate the applicable Sentencing
23 Guidelines range and to consider that range, possible departures
24 under the Sentencing Guidelines, and the other sentencing factors set
25 forth in 18 U.S.C. § 3553(a).  Defendant understands that the
26 Sentencing Guidelines are advisory only, that defendant cannot have
27 any expectation of receiving a sentence within the calculated
28 Sentencing Guidelines range, and that after considering the

                                15

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

  19. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense level: | 8 | [U.S.S.G. § 2B5.3(a)] |
|---|---|---|
| Infringement Amount More Than $550,000 and Up To $1.5 million (i.e. currently, approximately $893,492): | +14 | [U.S.S.G. § 2B5.3(b)(1); U.S.S.G. § 2B1.1(b)(1)(H)] |
| Offense Involved Manufacture or Importation of Infringing Items: | + 2 | [U.S.S.G. § 2B5.3(b)(3)(A)] |
| Offense involved a counterfeit military good or service the use, malfunction, or failure of which is likely to cause (A) the disclosure of classified information; (B) the impairment of combat operations; or (C) other significant harm to (i) a combat operation, (ii) a member of the Armed Forces, or (iii) national security: | + 2 | [U.S.S.G. § 2B5.3(b)(7)] |
| Acceptance of Responsibility: | - 3 | [U.S.S.G. § 3E1.1(b)] |
| Total Offense Level: | 23 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraphs 2 and 3 are met and if defendant has not committed, and refrains from committing, acts constituting

16

obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 33 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

20.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22.   Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.   The right to persist in a plea of not guilty.

      b.   The right to a speedy and public trial by jury.

1        c.   The right to be represented by counsel — and if

2  necessary have the court appoint counsel -- at trial.  Defendant

3  understands, however, that, defendant retains the right to be

4  represented by counsel -- and if necessary have the court appoint

5  counsel — at every other stage of the proceeding.

6        d.   The right to be presumed innocent and to have the

7  burden of proof placed on the government to prove defendant guilty

8  beyond a reasonable doubt.

9        e.   The right to confront and cross-examine witnesses

10  against defendant.

11        f.   The right to testify and to present evidence in

12  opposition to the charges, including the right to compel the

13  attendance of witnesses to testify.

14        g.   The right not to be compelled to testify, and, if

15  defendant chose not to testify or present evidence, to have that

16  choice not be used against defendant.

17        h.   Any and all rights to pursue any affirmative defenses,

18  Fourth Amendment or Fifth Amendment claims, and other pretrial

19  motions that have been filed or could be filed.

20               WAIVER OF RETURN OF DIGITAL DATA

21    23.  Understanding that the government has in its possession

22  digital devices and/or digital media seized from defendant, defendant

23  waives any right to the return of digital data contained on those

24  digital devices and/or digital media and agrees that if any of these

25  digital devices and/or digital media are returned to defendant, the

26  government may delete all digital data from those digital devices

27  and/or digital media before they are returned to defendant.

28

WAIVER OF APPEAL OF CONVICTION

24.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 57 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $802,638; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Orders 318 and 18-10 of this Court; and the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 46 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $802,638.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

27.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

28.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, or if any of the sentencing enhancements imposed by the Court to which the parties stipulated in this agreement is vacated or set aside, the USAO may: (a) ask the

1  Court to resentence defendant on any remaining counts of conviction,
2  with both the USAO and defendant being released from any stipulations
3  regarding sentencing contained in this agreement, (b) ask the Court
4  to void the entire plea agreement and vacate defendant's guilty pleas
5  on any remaining counts of conviction, with both the USAO and
6  defendant being released from all their obligations under this
7  agreement, or (c) leave defendant's remaining convictions, sentence,
8  and plea agreement intact.  Defendant agrees that the choice among
9  these three options rests in the exclusive discretion of the USAO.

10                    EFFECTIVE DATE OF AGREEMENT

11      29.  This agreement is effective upon signature and execution of
12  all required certifications by defendant, defendant's counsel, and an
13  Assistant United States Attorney.

14                      BREACH OF AGREEMENT

15      30.  Defendant agrees that if defendant, at any time after the
16  signature of this agreement and execution of all required
17  certifications by defendant, defendant's counsel, and an Assistant
18  United States Attorney, knowingly violates or fails to perform any of
19  defendant's obligations under this agreement ("a breach"), the USAO
20  may declare this agreement breached.  All of defendant's obligations
21  are material, a single breach of this agreement is sufficient for the
22  USAO to declare a breach, and defendant shall not be deemed to have
23  cured a breach without the express agreement of the USAO in writing.
24  If the USAO declares this agreement breached, and the Court finds
25  such a breach to have occurred, then: (a) if defendant has previously
26  entered guilty pleas pursuant to this agreement, defendant will not
27  be able to withdraw the guilty pleas, and (b) the USAO will be
28  relieved of all its obligations under this agreement.

1    31.  Following the Court's finding of a knowing breach of this
2  agreement by defendant, should the USAO choose to pursue any charge
3  that was either dismissed or not filed as a result of this agreement,
4  then:

5        a.  Defendant agrees that any applicable statute of
6  limitations is tolled between the date of defendant's signing of this
7  agreement and the filing commencing any such action.

8        b.  Defendant waives and gives up all defenses based on
9  the statute of limitations, any claim of pre-indictment delay, or any
10 speedy trial claim with respect to any such action, except to the
11 extent that such defenses existed as of the date of defendant's
12 signing this agreement.

13       c.  Defendant agrees that: (i) any statements made by
14 defendant, under oath, at the guilty plea hearing (if such a hearing
15 occurred prior to the breach); (ii) the agreed to factual basis
16 statement in this agreement; and (iii) any evidence derived from such
17 statements, shall be admissible against defendant in any such action
18 against defendant, and defendant waives and gives up any claim under
19 the United States Constitution, any statute, Rule 410 of the Federal
20 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
21 Procedure, or any other federal rule, that the statements or any
22 evidence derived from the statements should be suppressed or are
23 inadmissible.

24               COURT AND PROBATION OFFICE NOT PARTIES

25    32.  Defendant understands that the Court and the United States
26 Probation Office are not parties to this agreement and need not
27 accept any of the USAO's sentencing recommendations or the parties'
28 agreements to facts or sentencing factors.

22

33.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 19 are consistent with the facts of this case.   While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

34.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

35.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO

23

1  and defendant or defendant's attorney, and that no additional

2  promise, understanding, or agreement may be entered into unless in a

3  writing signed by all parties or on the record in court.

4            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

5       36.   The parties agree that this agreement will be considered

6  part of the record of defendant's guilty plea hearing as if the

7  entire agreement had been read into the record of the proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
10 CALIFORNIA

11 NICOLA T. HANNA
   United States Attorney

12

13 _____          12-27-18
   LISA E. FELDMAN                          Date
14 Assistant United States Attorney

15                                          12-27-2018
   _____          Date
16 ROGELIO VASQUEZ
   Defendant

17                                          12/27/18
   _____          Date
18 KATE CORRIGAN
   Attorney for Defendant
   ROGELIO VASQUEZ
19

20

21              CERTIFICATION OF DEFENDANT

22      I have read this agreement in its entirety.  I have had enough

23 time to review and consider this agreement, and I have carefully and

   thoroughly discussed every part of it with my attorney.  I understand
24
   the terms of this agreement, and I voluntarily agree to those terms.
25
   I have discussed the evidence with my attorney, and my attorney has
26
   advised me of my rights, of possible pretrial motions that might be
27
   filed, of possible defenses that might be asserted either prior to or
28

                                24

1  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
2  of relevant Sentencing Guidelines provisions, and of the consequences
3  of entering into this agreement.  No promises, inducements, or
4  representations of any kind have been made to me other than those
5  contained in this agreement.  No one has threatened or forced me in
6  any way to enter into this agreement. I am satisfied with the
7  representation of my attorney in this matter, and I am pleading
8  guilty because I am guilty of the charges and wish to take advantage
9  of the promises set forth in this agreement, and not for any other
10  reason.

11
12  ROGELIO VASQUEZ                              12-27-2018
    Defendant                                    Date
13

14

15

16                    CERTIFICATION OF DEFENDANT'S ATTORNEY

17        I am ROGELIO VASQUEZ's attorney.  I have carefully and
18  thoroughly discussed every part of this agreement with my client.
19  Further, I have fully advised my client of his rights, of possible
20  pretrial motions that might be filed, of possible defenses that might
21  be asserted either prior to or at trial, of the sentencing factors
22  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
23  provisions, and of the consequences of entering into this agreement.
24  To my knowledge: no promises, inducements, or representations of any
25  kind have been made to my client other than those contained in this
26  agreement; no one has threatened or forced my client in any way to
27  enter into this agreement; my client's decision to enter into this
28  agreement is an informed and voluntary one; and the factual basis set

                                    25

forth in this agreement is sufficient to support my client's entry of
guilty pleas pursuant to this agreement.

KATE CORRIGAN                                    12/27/18
Attorney for Defendant                           Date
ROGELIO VASQUEZ

26